The Fourth District's Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armon presiding. Good morning, counsel. We'll call case number 4-22-0900, Downing v. Somers. Could counsel for the appellant please state your name for the record. Good morning, your honors. James Schmidt for the appellants William and Sherry Somers, who are here with me today as well. Thank you. And counsel for the appellee, could you please state your name for the record. Yes, Attorney Barry Hines. I am attorney for the appellees, the plaintiffs. James Downing is trustee of the James Downing Irrevocable Trust. Mary Ellen Donovan, Julie Fowler, Bradley Swearingen, Susan Jackson, Amy Gill, Beverly Reese, Connie Harmon, Diane Petrick, Kristen Miller, and George T. White. All right. Thank you, counsel. Mr. Schmidt, you may proceed. Thank you, your honors. Counsel, may I please the court. Your honor, in this case involves an easement that the plaintiffs and appellees own or hold, which goes across the Somers property that they hold in fee. The circuit court in this case entered summary judgment in the plaintiff's favor, holding that the Somers could not place gates across that easement to protect their horses and their pasture land. Your honors, the circuit court erred in three respects in granting that order. First, it failed to consider the comparative value of the Somers, the interest that the Somers sought to protect with the interest that the plaintiffs hold in their easement, and instead only held that the Somers acted intentionally in that they intended the actions they took. It also erred in so holding because gates across easements can be reasonable when they're necessary to protect livestock. Finally, the circuit court erred in granting summary judgment because it's holding in its order deprived the Somers of the use of their land. Your honors, the court, when considering an easement and whether or not the landowners can place a gate across the easement, it should consider the comparative value of the interest that the landowners seek to protect with the interest that the easement holders have in using the easement. What authority do you have for that proposition? Your honor, as I stated, or I've said it in my briefs, but the courts of this state have compared intentional obstructions of easement with intentional interference with contracts. And when the court considers an intentional interference... You say courts. I'm sorry, the appellate court of this state has so held. And I can find a citation, I apologize. It's Metropolitan, right? That's right. Okay. It's one sentence in Metropolitan, right? That is correct, your honor, it is one sentence. And in fact, the sentence simply says that similar to torts of intentional interference, a claim of intentional interference with an easement seeks to protect the interest of those in possession. Why does that say anything more than, okay, there's a similarity there? Well, you're correct, your honor, it does say that there's a similarity there. Okay, but you're asking us to apply contract law then in a property case based on that one sentence. I am, your honor. Okay. Is there any property case that you know of reported in the state of Illinois that supports that principle? I believe, your honor, that the Metropolitan case supports that principle. It's not a property case, that's a contract case. That is correct, your honor. Is there any property case, Illinois property law, that supports that principle? Well, your honor, I have not found any case expressly so holding. Would it be fair to assume that an attorney of your experience, if there were such a case, knowing the significance of this issue, would have found it? I do believe, your honor, yes. I did research this and I believe I would have found such a case. There's obviously always the possibility I missed it. But I did diligently research and I was unable to find a case. No, I'm not sliding your research at all. I think you probably looked everywhere just like we did and there isn't any. Thank you, your honor. I just wanted to hear you say it. Thank you. I would say, though, that there are some decisions that kind of implicitly apply the same theories. What decisions would those be? So if we look at the Borrowman decision, in that case, and as I discussed in my reply brief, the Borrowman court. You know, so before we get to weighing weighing the equities, which, you know, the Summers acknowledge the court does not have to do if there's an intentional blockage. But before we get there, let's stop right there. If we find there's an intentional blockage, then we don't have to do any of the rest of this analysis at all, do we? I would I would disagree, your honor, respectfully, because I think that before we even get to weighing the equities, we have to look at the intentionality. And in order to consider the intentionality, we become a court of equity. I'm sorry. When did we become a court of equity? The appellate court, I don't believe, is a court of equity. OK, I just want to make sure, because you asked us for an equitable remedy. Well, what is the trial court's ruling? You asked for an equitable remedy at the appellate level. I'm asking the appellate court to reverse the circuit court and remand the case. But I do believe, again, that if we look at some other decisions such as the barman decision, the court kind of implicitly considered, you know, the the the value of the interests that are sought to be protected or to be used by the easement, as opposed to balancing the equities. And balancing the equities is a step that comes after the court determines intentionality, and it's our position that the court should determine determine intentionality by considering the comparative values of the interest that both parties seek to protect. So now we've circled back to that contract principle that you want to apply. That's correct, your honor. OK. And so as as you know, as I kind of states of the barman court. And again, as you as you noted, I didn't find any decision expressly so holding. But the barman court kind of implicitly considers that, you know, it looks at the value of the shed, which was not a fixture compared with the needs of the drainage district to keep the waterway clear, which were rendered impossible by the imposition of the shed place there. You probably agree that an easement of pertinent is a little different than a shed. I do agree, your honor. I do. OK. I merely use that as an example of how I believe courts implicitly consider the comparative value that an easement holder and a landowner both have. But see, when you do that, you've you've stepped ahead to a point in the process that is way beyond the question of whether there was an intentional interference. What you've done is you want to start the time clock at the point in time when they've after they've put up the fences, after they've turned it into a pasture for four horses for your client's wife. As opposed to looking at it at the time they first took possession of the property and actually before that, because the first piece of property they had on was a pertinent to the easement itself, wasn't it? Yes, your honor. OK. So they they knew the easement was there from the very beginning. That's correct. And the easement did not include any fences or any obstruction of any kind. Correct. That is correct. And from that point on, everything that has happened has been their use of that property in conflict with the actual easement itself. Well, your honor, I don't think that, you know, the imposition of the pasture and the fences to surround that pasture with gates, I don't believe is necessarily in conflict with the use of the easement. The gates do open. They've not they've never been locked. They were not locked at the time, you know, the court granted this order. But they weren't there at the time. They weren't there at the time that the your clients took possession of the property. That is correct, your honor. In fact, they even asked to have the easement surrendered and they elected not to. Well, they did, your honor. But that doesn't necessarily mean that they didn't also believe it to have been abandoned or that their use. Well, how can it be abandoned? They from the time they took possession of the property, they started using it. They started they planted trees. They plowed it up. And then eventually what you call abandonment, which I have to admit, counsel, I found kind of interesting in the argument in the brief. They put up fences with no gates and then say, well, since they haven't used the easement from the time they put up the fences with no gates, they must have abandoned the use of the easement. Well, your honor, the Summers believed it to be abandoned before that. So they from having lived there for a long time, they didn't see it used for many years and they believed it to be abandoned at the time they purchased the property. Also, at the time they purchased the property. Well, it's funny because then once they once they put up the trees in the in the furrow of the ground after they were complained, didn't they actually modify some of that? They did. And I would point out that they. And then once they put up the fence, they eventually put in gates. Wouldn't that be an acknowledgement of their recognition of the use of the easement? Yes, your honor. OK, but they've not only known the easement was there, but they have at times responded to the demands of the easement holder, the dominant property. So so at what point would they have considered it abandoned? They believed it to have been abandoned at the time that they purchased it back in 2005, I believe. Or you mean after they said they wouldn't give it up? No, it was before that, your honor. OK. It was before that. And they purchased it at auction. They were told by I forget who someone at the auctioneering agency that that it would be released. So they believed it to be abandoned. They were told it would be released. And on that basis, they purchased the property and their intentions in purchasing it was the whole time to put in that pasture. And so they continued to see that it wasn't used for the first two years. There was a letter from their attorney. Asking the property owners to release the easement, which was declined. That is correct, your honor. But I believe there's a difference between the letter come before or after the purchase. The letter came after the purchase. OK. So why would they have sent a letter asking to give up the easement if they supposedly purchased it with the understanding that there was going to be no easement? Well, simply to clear title, your honor. OK. So they wanted to clear title on that. They believe it to be abandoned. And so they wanted clear title. I also did send a letter and point out a couple of other discrepancies council before you move on. Yeah, I think it's obvious, but your clients seem to be relying upon the representation made to them by some unnamed person at the time of the auction. They were relying on that. I don't I don't know his name off the top of my head, but I believe that they know his name. And I believe that's in the record as well. It may not be. But it wasn't just it was it was not just some person who, you know, at random said told them, oh, I'm sure they'll release it. It was somebody who they believed had knowledge of that and authority to to tell them that. But importantly, it seems that they're gleaning the information that the property easement was abandoned by the dominant property. They glean the information that the that the easement was abandoned by their observations. So that's what they believed going into the auction. Their observations occurred. Observations occurred after the purchase. Was there any observation done prior to the purchase that you can point to? Well, many of their observations, John, at the home, their home where they have lived since 1990 is immediately next to the easement. In fact, at one point, a barn that they had built long before the purchase of the additional 60 acres, there was an allegation that that was built onto the easement and that barn obviously is on the property that they owned before purchasing the property that's subject to the action here, subject to the easement. So so they've lived there for quite some time. I believe it, you know, 1990 to 2005 would be 15 years that they that they lived there where the easement. I believe it immediately abuts their property and they just didn't see it used. They didn't see it used during that time. So even before the auction, they went into the auction believing it to have been abandoned. That was one of the reasons that they went in and wanted to consider purchasing this property. But apparently whoever it was that that has supposedly made this representation to them. Isn't someone that you feel had any authority sufficient for you to raise the claim of an agency or something of that nature? Well, I don't I didn't I didn't come into this case before summary judgment was granted, so I was not involved at that time. I don't I believe. No, fair enough. I understand. That's fine. Okay. I'm not going to hold you to somebody else's burden. Okay, thank you. Council, since time is moving, I would like to talk for a minute about the second point that you wanted to focus on. And that is whether or not gates were reasonably necessary to protect livestock. And I believe in your brief, you do argue that there is a line of cases, in fact, a long line of cases that recognize that gates across easements are reasonable if they are needed to keep livestock. And I believe you rely on three cases in support of this argument and also the argument that infrequent use of the right of way is outweighed by protection of farmland. Now, one of the cases. Two of them are actually quite old. One is green versus golf. I believe it is 1891 and Truex versus Gregory 1902. With respect to the green case, you state at page 15 of your brief, that decision, despite its age, remains binding precedent and Truex. I believe you indicate that the circuit court should have considered this case, that it was applicable to the facts here and that this case is binding precedent. Also, can you share with us what you're relying on to say that those cases with those dates are binding precedent. Yes, Your Honor. So I think in Green v. Golf, I think is an important one because in that case, there was no, there was an easement across land that was an express easement. And, you know, there were no gates initially when that easement was granted, but later the gates were imposed and that court held that, well, the easement owners had no express right to an open road. And that's the same thing we have here. But where I get to these cases being binding precedent is that the newer cases are all based on different circumstances. So in Nepalis, which was the case on which the circuit court expressly and relied exclusively, said that gates can be antagonistic and improper unless there are circumstances that make them reasonable. And one of those circumstances would be where there's livestock. The Nepalis court held in this case, there is no evidence to indicate any necessity for a gate since the farm use was for crops and not livestock. Of course, here we have horses and livestock. Well, my point has to do really with finding precedent and what this court should do with that in looking at it. I mean, isn't there a principle of law here that says we have an Illinois Supreme Court case, Bryson v. News America Publications, 174 Illinois 2nd, 77, 1996. And an appellate court case, I think it's from the first district that talks about that case from 1999, North Shore Community Bank and Trust v. Polar. Even though appellate court decisions issued before 1935 have no binding authority. So asking this court to consider these cases as binding authority really, I think, sends us down the wrong path. If you want us to review them as persuasive, maybe we could, but in terms of binding authority, our Supreme Court has said, oh no, that is not something we can or should do. So that was the point that I'm getting at. Thank you, Your Honor. My understanding is that the North Shore ruling applies to appellate court decisions as opposed to Illinois Supreme Court decisions. And so the decisions I cited, I believe, are Illinois Supreme Court decisions, including the Green v. Goff decision where the Illinois Supreme Court expressly adopts the appellate court's reasoning and the appellate court's opinion below as the Supreme Court's opinion. So that is where I come with the argument that I believe those are binding decisions because they are Illinois Supreme Court decisions. And furthermore, because the subsequent decisions, they don't overrule those. They just apply different law to different circumstances. Okay. I see I'm within my two minute mark. So one other thing I wanted to get to was, you know, the circuit court erred because its ruling deprives the Summers of the use of their land. They did purchase this land with the intention to make it a pasture for their horses. And I think it's pretty well established that a landowner can use his land in any way that does not unreasonably interfere with the easement. And when we look at the Beggs v. Ragsdale case, which is a more recent decision, I believe it's 1983. In that case, we have a similar situation where an easement holder, he didn't like that he had to traverse through the landowner's livestock field. In that case, it was cattle. And, you know, the easement holder didn't like that the cattle would, you know, he was worried that they would approach. I see I'm out of time, Your Honor, if I may have leave. Go ahead and finish your thought. Thank you. And so in that case, you know, he didn't like the fact that the cattle could, they might tear up the easement or they might approach his vehicles, but they hadn't actually done that. And so the circuit court had held that he could put fences in to enclose the easement, which is the same thing that the Summers would have to do here. But the appellate court overturned, they overruled, if I could speak right, they reversed that and held that what that would do is essentially is give the landowner an easement over his own property. And that was impermissible. And so we would ask, Your Honors, that the court reverse the circuit court and remand this matter. Thank you. Thank you, Counselor. You have an opportunity on rebuttal. Thank you. Mr. Hines. Thank you, Your Honor. May it please the court, Counsel. I believe that the trial court carefully reviewed the facts in this case. They prepared a written order in which they summarize those facts, went through them and reached the conclusion that there was no question on the facts. There was no genuine issue of fact that the defendant's conduct was intentional in blocking this easement. It was a repeated blocking of the easement from the time they acquired the property down to 2020 when they finally put three gates in the fences. I refer to them as corrals. They were to contain horses. That could seem to me to be no clear or plainer case of an intentional act by the defendants. They knew about this easement. They live next door to this easement. They admit that they knew about the easement when they bid on their property, the 60 acres next to them. And yet they went ahead and purchased it anyway. And then only asked for a release of the easement after they had purchased the property. And that request was denied. At that point in time, they just went ahead, disc up the property, planted crops on the easement, ultimately planted trees. And in 2007, two years after they bought it, they put up these fences to which there were no gates. So from 2007 to 2020, the farm tenant, Mr. Lay, whose affidavit is part of the record, could not get down this road, could not pass it. In fact, in deposition, I asked Mr. Summer, did you block that easement so that it couldn't be used after it was acquired? And his answer was very plain up front. Yes, yes, was his answer. So the defendants have admitted that they blocked that easement with the intent that it could not be used. Counsel, how do you respond? Excuse me. Good morning. How do you respond, though, to counsel's argument that they thought it was abandoned, that they needed a pasture for their horses, and that maybe they didn't deliberately or out of hostility block this access easement. But there were duplicate purposes and intents involved here. The farm tenant for the White Heirs, Mike Lay, his affidavit is part of the record in this case, your honor. And his affidavit establishes that he used that easement road until it was blocked in 2005 by the defendants. That's when he sought access to the white fields that lay north of the defendant's property. Once it was blocked, there was another way in, which was off of a four-lane controlled highway, which he used then for the next 13 years. Then in 2020, when the gates were put in, he went back and began using the easement again. So there was a period of 13 years when this easement was not used because it was blocked. Why isn't the question of intent a question of fact for the jury and not subject of motion for summary judgment? Well, I think your honor mentioned the Beggs decision, or counsel mentioned the Beggs decision. Beggs decision talks about the role of the trial court in determining the facts. That is something within the purview of the trial court to determine the facts that go to the issue of intention. I think it is an appropriate matter for summary judgment. I think there's, you know, the facts when you pile them all up here, the repeated attempts to block this easement, that there really was no question, no genuine question of material fact as to what was going on. The defendants argue they were protecting their animals. How does planting crops or planting trees in the easement protect their animals? The fences keep their animals from getting out. But, you know, the Truax decision, which your honor questioned about the 1902 Illinois Supreme Court case, it contains in it, it was a case involving confining cattle. And the cattle were confined over the easement and it was used as a feedlot over the easement. The court there did allow a fence at the terminus or where the easement connected to the public road because there had been a history of an offense there. But the court went on to say in the very next paragraph, next to the last paragraph of the decision, that what the defendants in that case were doing was not proper. Feeding cattle on top of an easement, letting cattle graze on top of an easement is inconsistent with the idea of an easement that is for access. And that though they might have been entitled to the gate, they were not entitled to be doing what they were doing past that gate. Your honor, I think this case is simply involves defendants who purchased land, thinking that they could get out of the express easement they could not, perhaps they were misguided, misled, but this is an express easement given by deed. It was a record. They admitted they knew about it. They did not have constructive notice, they had actual notice and still they went ahead and they bought the land. And now they're complaining, they're unhappy that that easement road is there, so they decided to take the law in their own hands and block it. Your honor, that is an appropriate matter for summary judgment. Well, if they were forced to remove gates, wouldn't they need then, if they were to keep these horses in the pasture, need really to install two sets of gates on either side of this easement to create two pastures because one of the pastures really just had the water for the horses. And wouldn't that diminish the value of this property? You're talking about the comparative value now of the argument of counsel. This tract that they purchased is 60 acres in size and they found it necessary to put two enclosures directly on top of the access easement. I have questioned that, I've always questioned that, the appropriateness of that. That goes to this issue of intent. They could have put those enclosures somewhere else on the 60 acres. They could have gotten water to the horses. I cannot believe that that is a sole place that those enclosures should be. And again, they knew about this, your honor. The easement predates their ownership. The easement was there when they bought it. They bought it and then they attempted to modify the easement, get out of the easement, defeat the easement. This could happen with any easement. Are we going to let people who have constructive notice, actual notice of a property right, acquire the property, which should be subject to that right, but say, oh yes, but my plan for this property is to do this or do that. And therefore, they defeat that easement. That is just not just, it's not proper, your honor. It should not be permitted. They took the law in their own hands here to try and defeat an easement, which otherwise is a pertinent to the land, is expressed. There's no question about it. It should not be permitted. I believe the trial court was more than justified. They had the facts on their side. The law and the motion for summary judgment was properly allowed by the trial court. Thank you. My argument, your honor, is very simple. Having determined that the intention of the defendants was to defeat the easement, and that that intention was made knowingly with actual knowledge, the court needed go no further. They did not need to consider the reasonableness or the comparative value. This court in the Borrowman decision said it's intentional. The court need not balance the equities. They need go no further. They can enter judgment then and there. And that's what happened in this case. And I believe it was proper and the court ruled correctly. And we would ask your honors to affirm the decision of the trial court. All right, thank you. I'm sorry. Justice Zenoff, did you have another question? No, not unless you have questions, your honor. Well, I was just going to ask counsel, when I asked the question, really, I was focusing on appellate court decisions pre-1935, and counsel aptly pointed out that Green v. Goff and Truax decision were Illinois Supreme Court decisions. How do you respond to the fact that he believes those are controlling even though they're old and we should follow them? Are those cases on all fours with our case or our facts or are they distinguishable? I think they're distinguishable. And if so, how are they distinguishable? How? In Truax, there was a history of the easement being gated at its terminus where it met the highway. Right. You mentioned that. There was just a continuation of what had been the case for a long time. In the Green case, that was an easement whereby there was additional language in the easement that the holder of the easement could do nothing to devalue the servant property. I think that that goes with every easement. An easement, the dominant state is enjoying the easement for a specific purpose, and they cannot use the easement beyond that purpose. And they cannot do anything that makes the easement more a burden on the servant land than it was intended. Our easement is for access. That is all we want is to get back and forth from the public highway to the White Heirs Farm. But that access should not be impeded. We should do nothing that adds to the burden on the servant estate. But the servant estate should do nothing that diminishes our right of access. And there's many cases, including the Illinois Supreme Court decision in, slipping my mind, the Squires, I think it was the Squires decision, that every express easement, any blockage of it, any kind of interruption with or interference with it, is antagonistic to the easement and should be not allowed. That is all we're asking. We want the gates taken down. We want to be able to pass through. Now that means that the defendant is going to have to move their enclosures for their horses. They've got a lot of ways they can move it. We just don't want it sitting on top of the access easement. Thank you. Thank you, counsel. Mr. Schmidt, rebuttal. Thank you, Your Honor. So I think to go to counsel's suggestion that the Somers actions have been intentional to block it from the get-go, I think what the court should look at is where we are today. And where we are today is that there are fences there with gates. Well, but see, if you do that, then you ignore basic property law. And you allow for, essentially, the exhaustion of any easement as long as the servient landholder then develops their property in such a way that it becomes more expensive or more cumbersome on them to remove their obstructions than it might be on the easement hold. I mean, that kind of puts property law on its head and says that, well, as long as you just make it more difficult, more expensive, or more obtrusive on us, even though we took it with knowing that this easement existed, now that we have created this huge whatever, gee, we can't be expected to remove it now. I mean, that's contrary to the basic principles of property. I think, Your Honor, the situation you described is a little bit different. So when we look at, for example, Borrowman, where he built a shed on top of the easement, the shed has to go, right? If the Somers fence was here with no gates, I think we'd be in a different situation. But where we are today is it does have gates. Those gates allow access. They're not padlocked. They've not been padlocked. If they were padlocked, we'd be in a different situation. But when we look at, as an example, the 166th Symphony Way decision, where in that case, I mean, they put concrete blocks to block the easement. They had done everything they could. I think during the course of trial, the landowner tried to terminate the easement. I mean, they did everything they could, but the fact was that a gate became necessary for other reasons. And when they put in that gate, the court allowed them to place that gate there. And the gate wasn't there at the time the easement was created, but it was put in later because it became necessary. Similarly, in this case, the Somers purchased the property in order to put their pasture exactly where it is. And they put it where it is because it was planned to be there because it's convenient to where they had already lived, where their barn is, which is the shelter for the horses, where the access to water is, which is obviously from their home. And so that's why the pasture is where it is. It wasn't put there just because that's where the easement goes. It was put there because that was what was most convenient and the best way to care for their horses. And so I guess what I mean is, I understand what the court's saying. We can't just let somebody put down boulders or blocks or put in a fence, but what I believe the court should look at is the way that the easement is today. And the way it is today is that there's a fence there with gates. Okay, counsel, before we run out of time, let me ask you a question. You're talking about subservient property and what's convenient for the owners for that property. You've got a case that states a gate was placed later after the easement was acquired. Explain to me how the dominant user of the easement would access the easement and drive on through and drive back. What would that process entail today? Today? Okay, so what I mean, the dominant owner would approach. There is a gate. I think Mr. Hines described it as two separate pastures. It's really one pasture with a fence in the middle. And so there are three sets of gates. But if the dominant owner lets the property owner know they're going to use the gate, the horses can be moved to a different area or at the very least, the middle gate can be left open. So what it would require is the dominant owner would approach. He would have to open a gate, drive through, get back out and close the gate if he doesn't have someone else with him. Go through the pasture to the other side, open the gate again, drive through and close the gate. Do you have any authority for this idea of a limited easement with notice being required? You know, that was just, that was just a suggestion. But it's something that was offered. So we're not suggesting they have to do that. They could do it in the way that I just described. But the Summers have said that they will, and I see I'm out of time. If I can finish my sentence. Thank you. But the Summers have said that if the easement holders contact them, they're happy to work with them. And so we believe that would be another way the circuit court could have fashioned a ruling. Not necessary. As I said, the easement holder could have used it in the way I just described. Well, may I ask another question? Certainly. Just sort of fundamental to the idea and legal principle of easements. Is it still an easement if the dominant property has to ask or give notice to use the easement to the subservient property? I can see the court suggesting that that would be a more limited easement. And I can understand that. But I think where we would get to is that the dominant owner still has the right to use the easement as I described, whereby he would open a gate. At most, he would have to open three gates to traverse through. And I go back to the Green Re-Golf decision, wherein there is no express right to an open road in this express easement. All right. Thank you, counsel. Thank you both. The court will take this matter under advisement. The court stands in recess.